UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROELKIS MILLET ULLOA,

Petitioner,

v.

CHRISTOPHER J. LAROSE, Warden, Otay Mesa Detention Center; GREGORY J. ARCHAMBEAULT, San Diego Field Office Director, ICE Enforcement and Removal Operations; TODD LYONS, Acting Director of ICE; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; and TODD BLANCHE, Acting United States Attorney General, in their official capacities,

Respondents.

Case No.: 3:26-cv-04418-JES-VET

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

**[ECF No. 1]**

Before the Court is Petitioner Roelkis Millet Ulloa's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Response, ECF No. 4 ("Res."), in which they do not oppose the Petition and defer to the Court as to the appropriate relief. Res. at 1. The Court has taken the matter under submission. For the reasons set forth below, the Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioner, a thirty-six-year-old citizen of Cuba, was paroled into the United States on September 5, 2023, via the CBP One application. Pet. ¶¶ 1–2, 15. Since then, Petitioner has continuously resided in the United States, been gainfully employed, and does not have any criminal history. *Id.* ¶¶ 1, 22. He is married to a lawful permanent resident, and has a one-year-old daughter, who is a U.S. citizen. *Id.* ¶ 1; *Id.* at 26–28.

Upon Petitioner's entry, the Department of Homeland Security ("DHS") initiated removal proceedings against him. *Id.* ¶ 16. The parties jointly moved to dismiss those proceedings, and the Immigration Court granted the motion on February 15, 2024. *Id.* ¶ 17; *Id.* at 23. Petitioner, thereafter, timely filed a Form I-485 application to adjust his immigration status to that of a lawful permanent resident, under the Cuban Adjustment Act. *Id.* ¶¶ 18, 23. Petitioner's Form I-485 application remains pending before U.S. Citizenship and Immigration Services ("USCIS"). *Id.*

In April 2025, DHS terminated CBP One paroles issued between May 16, 2023, and January 19, 2025, a termination that Petitioner alleges applied to his parole. *Id.* ¶ 19. On July 29, 2026, Respondents detained Petitioner at an immigration checkpoint while he was traveling home with his wife and child. *Id.* ¶ 21. Petitioner has remained in custody at the Otay Mesa Detention Center ever since. *Id.* ¶ 3.

Petitioner brings this action alleging that Respondents failed to comply with the regulatory procedures governing termination of his parole, in violation of the *Accardi* doctrine and the Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 32–58; *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus

to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

The Court's analysis follows the reasoning previously set forth by the undersigned in *Gergawi v. LaRose*, which the Court incorporates by reference. No. 3:25-cv-3352-JES-MMP, 2025 WL 3719321, at *1-4 (S.D. Cal. Dec. 23, 2025).

### A. Jurisdiction

The Court finds that 8 U.S.C. § ("Section") 1252's jurisdiction stripping provisions do not bar it from considering Petitioner's habeas Petition. *See Martinez Lopez v. Noem et al.*, No: 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2–3 (S.D. Cal. Oct. 30, 2025). Further, the prudential administrative exhaustion requirement for claims made under 28 U.S.C. § 2241 is excused. *Id*. The Court, therefore, finds that it has jurisdiction to hear the Petition.

### B. Respondents' Termination of Petitioner's Parole Was Unlawful

The Government's Response, in accordance with recent Ninth Circuit law, concedes that Petitioner is subject to detention authority under Section 1226(a), not Section 1225, and represents that it does not oppose the Petition. Res. at 1–2; *see Rodriguez Vazquez v. Bostock*, No. 25-6842, --- F.4th ---, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026) The Court, therefore, focuses its inquiry into: (1) Whether the Government violated Petitioner's due process rights when it re-detained him; and (2) if so, what is the appropriate remedy.

The Response also states that Petitioner was previously released from immigration custody on parole, under Section 1182(d)(5), but concedes that it "currently ha[s] insufficient information" to show that the parole was terminated in compliance with 8

C.F.R. § 212.5(e)(2). *Id*. On this basis, the Government does not oppose the Petition and defers to the Court on the appropriate relief. *Id*.

The Court finds this concession dispositive. Federal agencies must comply with their own regulations, and failure to do so renders resulting agency action unlawful. *Accardi v. Shaughnessy*, 347 U.S. at 268. Federal regulations impose procedural prerequisites before DHS may revoke a noncitizen's parole. *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025); *see* 8 C.F.R. § 212.5(e)(2). "Parole may be revoked" by the district director "in his or her discretion," but only upon a determination that the purposes of the parole have been served, that the parole violates the terms under which it was granted, or upon issuance of a charging document. 8 C.F.R. § 212.5(e)(2). The regulatory framework also requires that a noncitizen whose parole is being revoked, be given notice and an opportunity to be heard before or promptly after revocation. *See id*.

Where DHS terminates parole without complying with these regulatory prerequisites, the resulting detention is unlawful. *See Doe v. DHS*, No. 1:25-cv-12245, 2026 WL 880442, at *11 (D. Mass. Mar. 31, 2026) (DHS exceeded its authority by terminating CBP One parole through mass revocation without individualized determinations); *Arias v. Larose*, No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385, at *2–4 (S.D. Cal. Nov. 25, 2025) (unlawful parole revocation renders subsequent detention unauthorized).

Petitioner alleges that he complied with all conditions of his release. Pet. ¶ 48. He also claims that he did not receive any notice of revocation of his release, and no opportunity to be heard, before he was re-detained on June 30, 2026. *Id*. ¶ 41. On this record, the Government cannot, and do not attempt to, contest these assertions. *See generally* Res.

The Court, accordingly, finds that the Government violated Petitioner's due process rights when it re-detained him and, thereby, revoked his parole—without any notice or hearing. *See C.A.R.V. v. Wofford*, No. 1:25-cv-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025); *Leiva Flores v. Albarran*, No. 25-cv-09302-AMO, 2025 WL

3228306, at *5 (N.D. Cal. Nov. 19, 2025); *Faizyan v. Casey*, No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025).

### C. The Appropriate Remedy is Immediate Release

Where the Government lacks the lawful authority to detain a noncitizen in the first place—as is the case here—an order directing a bond hearing cannot adequately remedy the harm, because such a hearing "cannot serve as an adequate procedural safeguard" where "it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025); *see also Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("[E]ven if Petitioner[] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention."). Given the Government's inability to establish its compliance with the regulatory prerequisites to terminate Petitioner's parole, immediate release, rather than a bond hearing, is the appropriate remedy. *See Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025); *Accardi*, 347 U.S. at 268

The Court notes that DHS retains authority to terminate Petitioner's parole and take him back into custody in the future, provided it does so in compliance with 8 C.F.R. § 212.5(e)(2).

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** the Petition for Writ of Habeas Corpus and **ORDERS** the following:

(1) Respondents are **ORDERED** to immediately **RELEASE** Petitioner from custody, under the same conditions as previously imposed, and to **FILE** a Notice of Compliance no later than August 24, 2026, confirming that Petitioner has been released;

(2) Respondents are **ENJOINED** from re-detaining Petitioner unless he is: (1) provided with prior written notice of the grounds

for revocation of his release; and (2) a hearing before a neutral decisionmaker, at which the Government shall bear the burden of proving by clear and convincing evidence that detention is necessary; and

(3) The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: August 20, 2026

Honorable James E. Simmons Jr.
United States District Judge